UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| FB&F ENTERTAINMENT, LLC | ) | CASE NO.: 11-04382 |
| | ) | |
| DEBTOR. | ) | |

**MOTION FOR RELIEF FROM STAY AND ABANDONMENT**

Comes now SMC–Retail, LLC ("SMC"), by counsel, and pursuant to 11 U.S.C. §§ 362 and 554, submits it *Motion for Relief from Stay and Abandonment* and respectfully represents as follows:

**Introduction and Jurisdiction**

1. On April 12, 2011, FB&F Entertainment, LLC ("FB&F" or the "Debtor") filed its voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code (the "Petition Date").

2. SMC owns real property that is currently used and occupied by the Debtor. Specifically, approximately 44,818 square feet of commercial space located at 141 S. Meridian Street, Indianapolis, Indiana (the "Premises").

3. As more fully described below, prior to termination of the Lease between the parties, the Debtor leased the Premises from SMC and was obligated to, among other things, satisfy rent, CAM, utilities, and real estate taxes on a timely basis. The monthly base rent due from the Debtor to SMC was approximately $52,000.

4. Beginning in June, 2010 and continuing through the Petition Date, the monthly rent due to SMC has not been satisfied and the Debtor is further indebted to SMC for other amounts due under the Lease. According to SMC's books and records the principal balance due to SMC as of April 14, 2011 totals $697,237.15.

5.  This Court has jurisdiction to hear and decide this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and this matter is a core proceeding under 28 U.S.C. § 157.

6.  The statutory predicates for the relief requested in this Motion include 28 U.S.C. §§ 362 and 554 and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

**Factual Background**

A.  Lease Between SMC and the Debtor.

7.  On or about September 4, 1998, 141 Building Partnership, an Indiana general partnership, by Norle Investments, Inc. ("Norle"), predecessor in interest to SMC, as landlord, and Jillian's of Indianapolis, IN, Inc. ("Jillian's"), as tenant, entered into a "Lease Agreement" ("Original Lease") for the Premises.

8.  On or about September 4, 1998, Norle, as landlord, and Jillian's, as tenant, entered into a "Memorandum of Lease" ("Memorandum"), which was recorded with the Marion County Recorder's Office on December 30, 1998 as Instrument No. 1998-0230555.

9.  On or about December 3, 1998, Norle, as landlord, and Jillian's, as tenant, entered into an "Addendum" to the Original Lease ("Addendum").

10. On or about April 5, 2000, Norle, as landlord, and Jillian's, as tenant, entered into a "First Amendment to Lease Agreement" ("First Amendment") which, among other things, expanded the Premises to 52,830 square feet ("Expansion Space") and amended the minimum rent payment.

11. On or about March 1, 2002, Norle, as landlord, and Jillian's, as tenant, entered into an "Amendment to Memorandum of Lease" ("Amendment to Memorandum") which, among other things, corrected the legal description of the Premises.  The Amendment to

2

Memorandum was recorded in the Marion County Recorder's Office as Instrument No. 2002-0044598.

12. On or about April 16, 2002, Norle, as landlord, and Jillian's, as tenant, entered into an "Amendment and Termination Agreement" ("Second Amendment") which, among other things, terminated the First Amendment as it related to the Expansion Space and amended the minimum rent payment.

13. On or about September 28, 2007, SMC, successor in interest to Norle, as landlord, and JBC of Indianapolis, IN, Inc. ("JBC"), successor in interest to Jillian's, as tenant, entered into a "Third Amendment to Lease" ("Third Amendment") which, among other things, extended the term of the Original Lease (as amended) and amended the minimum rent payment.

14. In October 2008, SMC, as landlord, and JBC, as tenant, entered into a "Fourth Amendment to Lease" ("Fourth Amendment") which, among other things, amended the minimum rent payment.

15. On or about June 5, 2009, SMC, as landlord, and FB&F, successor in interest to JBC, as tenant, entered into a "Fifth Amendment to Lease and Assignment and Assumption" ("Fifth Amendment"), which, among other things, assigned the Lease to FB&F

16. The Original Lease, Memorandum, Addendum, First Amendment, Amendment to Memorandum, Second Amendment, Third Amendment, Fourth Amendment, and Fifth Amendment are referred to collectively as the "Lease". A true, correct, and authentic copy of the Lease is attached hereto and incorporated herein as ***Exhibit A***.[1]

---

[1] ***Exhibit A*** includes the Original Lease, the Memorandum, the Addendum, the First Amendment, the Amendment to Memorandum, the Second Amendment, the Third Amendment, the Fourth Amendment, and the Fifth Amendment.

3

B.    The Debtor's Continuing Defaults Under the Lease.

17.    Pursuant to the Lease, the Debtor was required to, among other things, pay rent, CAM, utilities, and real estate taxes on a timely basis.

18.    The Debtor has failed to pay rent, CAM, utilities, and real estate taxes on a timely basis.

19.    Beginning in June, 2010 and continuing through the Petition Date, the monthly rent due to SMC has not been satisfied and the Debtor is further indebted to SMC for other amounts due under the Lease. According to SMC's books and records the principal balance due to SMC as of April 14, 2011 totals $697,237.15. A true and accurate copy of the records maintained by SMC in the ordinary course of business establishing the amounts due is attached hereto and incorporated herein as *Exhibit B*.

20.    The Debtor has failed, and continues to fail to, maintain the Premises as required by the Lease and in such a manner as to interfere with the rights of third parties. SMC has frequently been required to hire third parties to rectify plumbing and other issues at its own expense in order to ensure that the Debtor's actions do not impair the rights of neighboring tenants.[2]

C.    Termination of Lease and State Court Possession Action.

21.    As a result of the Debtor's significant and continuing defaults under the Lease, on March 15, 2011, SMC tendered a "Notice of Termination of Lease" to the Debtor (the "Termination Notice". A true and accurate copy of the Termination Notice is attached hereto and incorporated herein as *Exhibit C*.

---

[2] Currently, the Debtor continues to mop its restroom in such a manner as to spill water into the office space of a neighboring tenant when the water goes through the floor drain. Despite requests that the Debtor simply seal the drain to avoid the issue, the Debtor has not done so.

22.     On February 4, 2011, SMC filed its *Complaint and Request for Prejudgment Possession and Damages* against the Debtor in the Marion Superior Court, thereby initiating Cause NO.: 49D11-1102-PL-7076 (the "State Court Action").

23.     On March 21, 2011, SMC filed an *Amended Complaint and Request for Prejudgment Possession and Damages* in the State Court Action.  The Amended Complaint contained identical substantive allegations but also named First Colorado National Bank ("FCNB"), the Debtor's lender, to answer as to any interests it may allege with respect to the Premises.

24.     SMC's request for prejudgment possession was scheduled for Hearing on March 17, 2011 and then continued to May 5, 2011.

**Request for Relief from the Automatic Stay and Abandonment**

25.     11 U.S.C. §362(d) sets forth the grounds upon which this Court may terminate, annul, modify, or condition the automatic stay, specifically providing in relevant part as follows:

> (d)     On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay –
>
> > (1)     for cause, including the lack of adequate protection...;
> >
> > (2)     with respect to a stay of an act against property …, if –
> >
> > > (A) the debtor does not have equity in such property; and
> > > (B) such property is not necessary to an effective reorganization.

11 U.S.C. §362(d).

26.     11 U.S.C. § 554 authorizes the Court to order the trustee to "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(b).  Here, because the entry of an order granting relief from stay is appropriate, the entry of an order abandoning any interest of the Debtor in the Premises is also

5

appropriate so that SMC may proceed as it is entitled under state law and also dispose of any property of the estate that remains on the Premises in accordance with state law.

27. With respect to the entry of relief from stay, Section 362(d)(1) does not define "cause" and courts must determine whether "cause" exists on a case-by-case basis depending on the totality of the circumstances. See e.g., *In re Petroleum Piping Contrs.*, 211 B.R. 290 (Bankr. N.D. Ind. 1997). Here, cause exists to grant SMC relief from stay on a number of grounds.

<u>The Lease Has Been Terminated and the Debtor Has No Further Rights Under the Lease</u>.

28. As set forth above, the Termination Notice tendered by SMC terminated the Lease. The Termination Notice was properly issued and delivered in accordance with the Lease and irrevocably ended any rights of the Debtor under the Lease. At most, the Debtor has a mere possessory interest in the Premises, which SMC was seeking to terminate in the State Court Action prior to the Petition Date.

29. Pursuant to Section 365(c)(3) of the Bankruptcy Code, a debtor-in-possession "may not assume or assign any . . . unexpired lease of the debtor . . . if . . . such lease is of nonresidential real property and had been terminated under applicable nonbankruptcy law prior to the order for relief." 11 U.S.C. § 365. Thus, pursuant to the Termination Notice and Section 365(c)(3) the Lease is not part of the Debtor's estate and cannot be assumed by the Debtor.

30. SMC understands that the Debtor intends to assert that Lease has not been terminated due to a provision in a June 30, 2009 "Subordination Agreement and Collateral Assignment of Lease Amendment" between the Debtor, SMC, and FCNB. In summary, this provision permits FCNB a limited thirty day right to cure amounts that may be due under the Lease and operate the Premises if agreed by SMC.

31.     While the provision in the Subordination Agreement undoubtedly gives FCNB a limited right to cure, it does not give the Debtor a right to cure.  Nor does it amend the Lease as it relates to events of default and the parties' rights and remedies as a result thereof.  The Subordination Agreement does not mandate that SMC's termination rights be suspended or waived. If that was the intent of the parties, the Subordination Agreement could have expressly provided for the same.

32.     Regardless, if FCNB timely exercises its right to tender a cure to SMC, FCNB remains entitled to do so.  Ultimately, the Debtor cannot attempt to take shelter under a cure provision for the benefit of a third party to skirt the plain language of the Lease.

<u>The Debtor Has Shown that it Has No Ability to Satisfy its Obligations Under the Lease</u>.

33.     The Debtor has failed to satisfy rent to SMC for many months and the Debtor's Chapter 11 filing is but one more in a long line of attempts by the Debtor to buy just a little bit more time.

34.     The amounts due to SMC are substantial and have a significant impact on SMC's business.  SMC is, by far, the largest creditor of the Debtor's estate and this proceeding is essentially a two party dispute.  As such, weighing of the harms to SMC against the likelihood of payment on a post-petition basis and a go-forward basis at the inception of the Debtor's case is appropriate and warranted.

35.     The Debtor's operations have not been able to sustain the attendant costs of the Debtor's use of the Premises.  SMC has no reason to believe that the Debtor intends to comply with its requirements under Section 365(d)(3) or has the financial ability to satisfy its requirements under Section 365(d)(3).  Even if the Debtor were to obtain authority to use cash collateral or were to obtain post-petition financing that allows for payments in an interim period, the Debtor has no

7

prospect of curing the large deficiency owed to SMC or meeting its obligations through the term of the Lease.

36.     Thus, the Debtor's Chapter 11 will only prolong the time in which SMC goes unpaid and increase SMC's claim.  Ultimately, cause exists to grant relief from stay where the Debtor has no prospect of satisfying the amounts due on account of its use of real property.

WHEREFORE, SMC respectfully requests that this Court enter an order granting relief from the automatic stay to SMC to enforce its rights in accordance with state law and obtain possession of the Premises, enter an order abandoning any interest of the Debtor in the Premises, and providing such other relief as is appropriate.

        Respectfully submitted,

        ICE MILLER LLP

        By: /s/ Ben T. Caughey
            Ben T. Caughey

ICE MILLER LLP
One American Square
Suite 2900
Indianapolis, IN 46282-0200
Telephone: (317) 236-2493

**CERTIFICATE OF SERVICE**

   The undersigned hereby certifies that a copy of the foregoing has been served on the following via the Court's cm/ecf delivery system and/or U.S. mail, first class postage prepaid, on the 15th day of April, 2011:

James A. Knauer
KROGER GARDIS & REGAS, LLP
111 Monument Circle
Suite 900
Indianapolis, IN 46204

Joseph F. McGonigal
OFFICE OF UNITED STATES TRUSTEE
101 W. Ohio Street, Suite 1000
Indianapolis, IN 46204

              By: /s/ Ben T. Caughey
                 Ben T. Caughey

ICE MILLER LLP
One American Square
Suite 2900
Indianapolis, IN 46282-0200
(317) 236-2100